## Sutton's Estate (No. 1).

*Executors and administrators—Indebtedness of executrix of estate—Interest.*

Where an executor is both a creditor and debtor of the estate, and the two debts are of about the same amount, and have been running for a long period of years, the executor if charged interest on his debt to the estate, should also be allowed interest on the estate's debt to him.

Argued April 15, 1901.   Appeal, No. 246, Jan. T., 1900, by

Peter Sutton, from judgment of Superior Court, Jan. T., 1899, No. 117, reversing decree of O. C. Luzerne Co., No. 704, of 1875, allowing claim of Peter Sutton as a creditor. Before McCollum, C. J., Mitchell, Brown, Mestrezat and Potter, JJ. Reversed.

Appeal from Superior Court. See 13 Pa. Superior Ct. 492.

The decedent sold a farm on November 23, 1872, to his son, Peter Sutton. The contract was a sealed writing. The terms of the payment were " one-half payable one year after the decease of said Silas Sutton, and the balance two years thereafter, with interest payable annually if called for, otherwise no interest to be paid during the natural life of the said Silas Sutton." The contract further provided, " that if at any time and as often as any instalments of the principal and interest, under this contract, shall become due and remain unpaid for the space of thirty days, the whole amount of the purchase money, above named, shall, therefore, become due and payable, and the said party of the first part and his legal representatives shall be thereupon entitled to re-enter and take possession of said land and premises, after paying the said Peter Sutton for all the improvements he has or may make thereon." Silas Sutton died December 21, 1874, leaving a will dated August 16, 1873, appointing his son, Peter Sutton, and his daughter, Annie G. Shelley, executors. The will directed the executors to apply the income of the estate and as much of the principal as necessary to the support of the decedent's wife, and directed that no division of the estate should be made until her death. She died October 14, 1896. The residue of the estate was given and devised one fifth to each of three children ; one fifth to the wife and children of decedent's son, Ira G. Sutton; one fifth to decedent's grandchildren, Ira T. Beisecker and Anna E. Beisecker, children of Lydia, deceased daughter of decedent.

No part of the purchase money for the farm was paid by Peter Sutton. On October 9, 1878, all of the owners of the residuary estate of Silas Sutton (except the children of Ira G. Sutton, who were then minors or unborn), executed an agreement with Peter Sutton allowing him to surrender the farm under the terms of the first agreement, by which the contract was made forfeitable for nonpayment. Thereafter, the farm

was treated as part of the estate of Silas Sutton, and Peter Sutton, as executor, as found by the court below, has accounted for the proceeds.

In the rescission of the first contract, Peter Sutton agreed to pay legal interest on the purchase money of the farm from the death of his father to October 9, 1878, the date of the contract of rescission.   In the original contract of sale there was a stipulation that on a forfeiture Peter Sutton should be paid for any improvements he might have put upon the property.   When the purchase was rescinded by the contract of October 9, 1878, the amount of the improvements was ascertained by three agreed, disinterested appraisers, who fixed the amount at $3,168.75. This amount was not paid by Peter Sutton or his coexecutor.

Within a few months after the death of the widow of the decedent, the executors of the decedent's will filed an account.

The orphans' court allowed interest on both the amount due by Peter Sutton to the estate, and upon the amount due to the estate by Peter Sutton.

On appeal the Superior Court in an opinion by W. W. PORTER, J., after stating the facts as above, disallowed the interest to Peter Sutton on the ground that he should have used the funds of the estate to pay the debt to himself, and thus tolled the running of interest.   The opinion was in part as follows:

The next question is, whether under the contract the allowance for improvements should bear interest.   Under the view we have taken of this contract, the appraised value of the improvements became a debt due by the estate of Silas Sutton from the date of the contract, October 9, 1878.   The amount was ascertained.   Peter Sutton was authorized to withhold the amount on any division of the premises or of the money arising from the sale of the same.   He was authorized to deduct the amount from the general estate of the decedent before distribution.   There seems to be no reason why he could not immediately have appropriated as executor the funds of the estate to the payment of this indebtedness.   If this be so, why should he not receive interest?   To this it is answered, he should have paid the debt and thus tolled the running of the interest.   The rejoinder is, that under the terms of the will the whole estate was pledged for the support of the decedent's wife, the mother of the accountant.   The filial relation may have been the mo-

tive for postponing the payment of the debt out of the principal of the estate. There is no unbending rule which requires a trustee to pay off a debt where the creditor is not pressing. It may be, in some cases, for the manifest benefit of an estate that the debt should be carried for a time. There is, however, the obligation to pay current interest, since by its accumulation the whole corpus may be swept from the remaindermen. It cannot be inferred that the payment of the principal and the accumulating interest was postponed because of the needs of the beneficiary for life, who had both income and principal as her security. Such a state of facts must be proved and with great clearness, to justify such a course as that taken by the accountant here. While our eyes are not closed to the fact that the appellant alone of all the signers of the agreement of 1878 now complains, yet are we of the opinion that error was committed in allowing interest on the claim in the absence of positive proof showing the necessity for deferring the payment of the principal and interest.

*Error assigned* was the judgment of the Superior Court.

*S. J. Strauss*, with him *G. K. Powell*, for appellant.—An accountant who is charged with interest on money received by him, is entitled to interest on the sum due him : Stewart's App., 110 Pa. 410 ; Armstrong's Est., 6 Watts, 236 ; Hobson's Est., 42 Pitts. L. J. 456 ; Jenkins's Est., 4 Kulp, 46.

We submit that the executor did no wrong in not claiming credit in his account for the debt due him ; that it is good practice for an executor who has a claim against the estate not to put it in his account, but to submit it as any other creditor should to the court with the evidence upon which it is based when the distribution comes to be made ; that this practice is in line with the best authorities not to mingle distribution with administration accounts : Yundt's Estate, 6 Pa. 35 ; Commonwealth v. Snyder, 62 Pa. 153 ; Transue's Estate, 141 Pa. 170.

*John E. Jenkins* and *Henry A. Fuller*, for appellees, cited : Richards v. Citizens Natural Gas Co., 130 Pa. 37.

OPINION BY MR. JUSTICE POTTER, July 17, 1901 :

The single question in this appeal is as to the allowance of

interest upon the claim of Peter Sutton, against the estate of his father, Silas Sutton.

Upon the filing of his account as one of the executors of his father, the orphans' court found that Peter Sutton was indebted to the estate in various sums, aggregating $3,083.64, upon which interest was charged against him, amounting to $3,073.53, making a total indebtedness of $6,157.17.

The orphans' court also found that he had a valid claim against the estate, upon October 9, 1879, of $3,168.75, and it allowed him interest thereupon to the date of distribution, $3,696.87, making his total claim against the estate $6,865.62. The Superior Court disallowed the interest upon the credit side of the account, without disturbing the interest charged upon the debit side.

We are at a loss to see upon what basis this can fairly be done. If Peter Sutton had paid to himself the amount of his claim against the estate, out of the funds in his own hands due to the estate, at any time during the period covered by the running of the account, it would have wiped out the interest earning capacity of the sum due to the estate. He owed the estate, and the estate was indebted to him. The amounts were not very far apart, the balance being against the estate, and in favor of Peter Sutton. Whether interest were charged and allowed upon both sides of the account, or upon neither, made but little difference. But, extending as the accounts did, over a period of some eighteen years, it would be most unjust to charge interest upon one side, and not allow it upon the other.

The suggestion in the opinion of the Superior Court that Peter Sutton should have paid the debt to himself, and thus stopped the running of interest against the estate, loses point when it is recalled that this could only have been done by applying the funds of the estate in his hands, which were drawing interest, and this act of payment would have at once destroyed the interest earning power of the fund.

We think the decree of the orphans' court did substantial justice as to this point, which is the only one in controversy in this appeal.

The judgment of the Superior Court is reversed, and the decree of the orphans' court is reinstated, and the record is remitted, for the purpose of distribution thereunder.